Richard Botway, Appellant, *v.* Hyman Schnitzer and Another, Respondents.

First Department, July 6, 1926.

Joint ventures — action for accounting — plaintiff and individual defendant made agreement that in case said defendant procured certain contract, corporation would be formed and plaintiff would receive one-fourth interest — plaintiff was instrumental in procuring contract — contract was taken in name of defendant corporation of which individual defendant was president — individual defendant repudiated contract with plaintiff — evidence shows joint venture between plaintiff and individual defendant and plaintiff is not required to resort to action at law — both defendants must account.

Both defendants must account to the plaintiff for the profits received from a joint venture, since it appears that the plaintiff and the individual defendant entered into an agreement whereby, if the individual defendant could procure a certain contract with a third person which was under negotiation between the plaintiff and said third person, the individual defendant would form a corporation to handle the business and that the plaintiff would be entitled to a one-fourth interest in the corporation; that the plaintiff introduced the individual defendant to the prospective customer and the contract was procured, but was taken in the name of the defendant corporation, of which the individual defend- . ant was president, and the individual defendant repudiated his contract with the plaintiff.

A joint venture was clearly established by the plaintiff's evidence, and the individual defendant cannot, by repudiating his contract, compel the plaintiff to resort to an action at law.

The defendant corporation must account for profits received from the joint venture, since it had knowledge of the agreement between the plaintiff and the individual defendant, for the knowledge of the individual defendant, its president, must be imputed to it.

Appeal by the plaintiff, Richard Botway, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of New York on the 17th day of December, 1925, upon the dismissal of the complaint without prejudice at the close of plaintiff's case.

*Samuel D. Smoleff* of counsel [*Pitkin & Rosensohn,* attorneys], for the appellant.

*Lewis Mayers* of counsel, for the respondents.

Finch, J. The complaint, in so far as the facts are material to a disposition of the question presented for decision, alleges, in substance, that the plaintiff was engaged in the business of manufacturing drop curtains for use and display at theatres, paying a rental to the management of such theatres for the privilege of

displaying the curtains and receiving compensation from advertisers whose advertisements were displayed thereon; that the defendant L. & S. Advertising Company, Inc., was engaged in a similar business; that the defendant Hyman Schnitzer was the president of said L. & S. Advertising Company, Inc., and one Charles S. Levin the treasurer thereof; that the plaintiff had been negotiating with the Marcus Loew Booking Agency, a corporation engaged in operating a number of theatres in New York city and elsewhere, for the display of advertising curtains at its theatres; that on or about August 14, 1923, it was mutually agreed by and between the plaintiff and the defendant Hyman Schnitzer that in consideration of the plaintiff's introducing the said defendant Hyman Schnitzer to the Marcus Loew Booking Agency, if said Charles S. Levin or the said Hyman Schnitzer should thereafter secure the right to display at the Marcus Loew theatres advertising curtains, a new company would be formed to take over the business of furnishing and displaying such curtains in the said theatres and in any other theatres from which similar privileges might be secured by either the said Charles S. Levin, Hyman Schnitzer, the plaintiff, or one Harry I. Pinckney. It is further alleged that it was mutually agreed by and between the plaintiff and the defendant Hyman Schnitzer that the ownership and stock interest in the said new company to be formed as aforesaid would be divided equally between the plaintiff, the defendant Hyman Schnitzer, the said Charles S. Levin and said Harry I. Pinckney. It is further alleged that thereafter the plaintiff introduced the defendant Hyman Schnitzer to the assistant manager of the Marcus Loew Booking Agency and that as a result of such introduction the defendant Hyman Schnitzer entered into a contract on behalf of the L. & S. Advertising Company, Inc., whereby the latter secured the exclusive right to display advertising curtains at the theatres operated by the said Marcus Loew Booking · Agency in the city of New York, the L. & S. Advertising Company, Inc., well knowing that the defendant Schnitzer had agreed that the plaintiff should have a one-fourth interest in the business so to be conducted. It is further alleged that the said L. & S. Advertising Company, Inc., has ever since exercised the said exclusive privilege, and continues to exercise the same, and has collected from its customers and retains large sums of money for painting and display advertisements on curtains hung at the various theatres in the city of New York operated by the said Marcus Loew Booking Agency; that similar privileges for the display of similar advertising curtains at other theatres in the city of New York have also been secured since the 14th day of August, 1923, by the said defendants,

and that the defendant L. & S. Advertising Company, Inc., has enjoyed and continues to enjoy the revenue from the display of curtains at such additional theatres, for all of which it has made no accounting and refuses to account to the plaintiff; that the defendants have wholly neglected and refused and still refuse to form a new corporation to take over the said business and to issue to the plaintiff one-fourth of the capital stock of the said new corporation; and the defendants have wholly neglected and refused and still refuse to account for and pay over to the plaintiff a one-fourth share and any share in the profits of the said business so conducted by them as aforesaid; that the said defendants hold in their hands a large sum of money, the proceeds of the said business over and above all expenses thereof, a portion of which is the property of this plaintiff, which as aforesaid they refuse to account for and pay over; that the plaintiff has at all times been ready, willing and able to take up and pay for his one-fourth share in the said new corporation to be formed as aforesaid, has so notified the defendants and has demanded an accounting of the business conducted by them. Wherefore, plaintiff demands judgment as follows: *First*, that an accounting be had between this plaintiff and the defendants upon the business conducted by the defendants as hereinbefore described; *second*, that the defendants be decreed to organize and form a new corporation, to issue to the plaintiff one-fourth of the capital stock thereof and to assign and transfer to such new corporation the said business as hereinbefore described; *third*, that upon the completion of the said accounting, the defend- ants be decreed to pay over to this plaintiff such sum as shall be ascertained to be due to him from the said defendants.

From the testimony adduced by the plaintiff, it appears that in July or August, 1923, the plaintiff met defendant Schnitzer and, in the course of a conversation, mentioned the fact that he was negotiating with the manager of the Loew theatres for a contract to install display curtains in such theatres. The plaintiff further stated to Schnitzer that the proposition was too big for him to handle alone, but that the manager of Loew's had undertaken to find him a partner. Schnitzer thereupon said to the plaintiff: "Supposing you take me in with you instead of Moscowitz getting someone else for you." To this the plaintiff acquiesced, whereupon the defendant Schnitzer suggested that they take in with them two other men, one of whom, Levin, was recommended as a financial man, and the other, Pinckney, as a capable solicitor. In this connection also the plaintiff acquiesced, whereupon the following writing, at Schnitzer's dictation, was prepared by his stenographer and signed by Schnitzer:

"NEW YORK, *August* 14, 1923.

"It is understood and agreed, in the event, that Mr. Charles S. Levin, or Mr. Hyman Schnitzer of the L. & S. Adv. Co., Inc., secures curtain privileges of the Marcus Loew Theatrical Enterprises, a new company is to be formed with the following:

"MR. CHARLES S. LEVIN
"MR. HYMAN SCHNITZER
"MR. RICHARD BOTWAY
"MR. HARRY I. PINCKNEY.

"It is also understood that whatever theatres we may secure is to go into this new company.

"An equal active interest, with the exception of Mr. C. S. Levin, is to be taken by all.                    "HYMAN SCHNITZER."

On the same day the plaintiff introduced Schnitzer to Moscowitz. Schnitzer negotiated with the latter a contract with Loew's. This contract was taken in the name of the L. & S. Advertising Company, Inc., of which Schnitzer was president. Schnitzer straightway refused to recognize any interest of the plaintiff in such contract. Upon the trial the plaintiff withdrew the demand for specific performance. The trial court thereupon held that the plaintiff had no right to an accounting, but that his right was limited to an action at law for damages, and dismissed the complaint without prejudice to such an action at law. The complaint having thus been dismissed at the close of the plaintiff's case, the plaintiff's testimony for the purposes of this appeal is to be taken as true, and the inferences most favorable to the plaintiff drawn therefrom. (*Wylie* v. *Marine Nat. Bank,* 61 N. Y. 415, 417.) From the aforesaid testimony it appears that the plaintiff and defendant Schnitzer entered into an agreement of joint venture and that the defendant, through the aid of the plaintiff, secured the Loew contract. This contract so received by Schnitzer was partnership property, in which defendant and the plaintiff were jointly interested. Instead, however, of carrying out the agreement of joint venture with the plaintiff, Schnitzer immediately repudiated the same and turned the said partnership property over to the L. & S. Advertising Company, Inc., of which he was president. Schnitzer now pleads his repudiation of the joint venture as a defense and urges that the plaintiff be remitted to an action at law for damages because of his (Schnitzer's) failure to carry out the contract of joint venture. A complete answer to this contention, however, is the fact that the breach of the joint venture was not *in limine,* but only after Schnitzer, with the help of the plaintiff, had acquired valuable property rights as the result of their joint efforts. In

so far as joint property has been acquired as the result of joint efforts, there is the liability to account.    This obligation to account is also upon the L. & S. Advertising Company, Inc., since the latter received the contract and the benefits of the partnership property with knowledge of the partnership agreement, for the knowledge of Schnitzer, its officer, must be imputed to it.    (*Crooks* v. *People's Nat. Bank,* 72 App. Div. 331; affd., 177 N. Y. 68.)    Under these circumstances, the plaintiff is entitled to an accounting by Schnitzer and by the L. & S. Advertising Company, Inc.    An analogous situation is presented in the case of *Ongley* v. *Marcin* (180 App. Div. 685).    It therein appeared that the plaintiff's husband had entered into a contract with the defendant producer to write and deliver a play; that the name of plaintiff's husband was to be advertised therewith, and that any change in the play was to be mutually agreed upon; that thereafter with the consent of the producer, the plaintiff's husband and the defendant coadventurer entered into an agreement by which the latter became associated in originating and writing the play, and by which the plaintiff's husband agreed to divide his profits equally; that prior to the making of this agreement the plot of the play had been agreed upon, and thereafter the parties worked together, but before it was entirely completed the plaintiff's husband died, and that thereafter the coadventurer or some other person completed the play which was produced by the defendant under a different name; that the coadventurer in violation of his duty to the plaintiff and her husband has appropriated the play and claims sole authorship and ownership thereof, and that the defendant producer has co-operated in producing the play in disregard of plaintiff's rights, and that a large amount of money has been realized in which the plaintiff is entitled to her proportionate interest.    It was held that these facts entitled the plaintiff to an accounting as against her husband's coadventurer, the court, by LAUGHLIN, J. (at p. 689), saying: " The contract was to write and deliver a play.    The defendant Woods has accepted the play which Ongley conceived and which was completed by his coadventurer.    If, therefore, the play was taken under the contract, the time specified for delivery was thereby waived.    Doubtless, if Ongley had not died and Woods had proceeded under the contract with him, but failed to pay the royalties, Ongley would not have been entitled to an accounting, but would have been relegated to an action at law to recover the royalties (*Marvin* v. *Brooks,* 94 N. Y. 71; *Moore* v. *Coyne,* 113 App. Div. 52); and the plaintiff, of course, occupies no better position with respect to the royalties as such; but Woods does not stand on the contract.    He has proceeded in disregard

of all of Ongley's and the plaintiff's rights, and in conjunction with the defendant Marcin has appropriated the play, the principal part of which originated with the plaintiff's husband and in which she is a co-owner, and since Woods had notice by the express terms of the contract between Ongley and Marcin, to which he consented, that Marcin could not without the consent of Ongley or Ongley's representative license the production of the play, it would seem, if Woods has produced it under some new agreement or arrangement with Marcin, that both of them would be accountable to the plaintiff. (*Schantz* v. *Oakman,* 163 N. Y. 148.)" So in the case at bar, as noted, Schnitzer repudiated the contract with the plaintiff and appropriated the partnership property to the use of himself and the L. & S. Advertising Company, Inc.

It follows, therefore, that the trial court was in error in dismissing the complaint. The judgment should, therefore, be reversed and a new trial ordered, with costs to the appellant to abide the event.

CLARKE, P. J., MERRELL, MARTIN and WAGNER, JJ., concur.

Judgment reversed and new trial ordered, with costs to the appellant to abide the event.