Zimmerman, J.
 

 Section 14, Article IV of the Constitution of Ohio, recites: ‘ ‘ The Judges of the supreme court, and of the court of common pleas, shall, at stated times, receive, for their services, such compensation as may be provided by law, which shall not be diminished, or increased, during their term of office; but they shall receive no fees or perquisites,
 
 nor hold any other office of profit or trust, under the authority of this State,
 
 pr the United States.
 
 All votes for either of them, for any elective office, except a judicial office, under the authority of this State, given by the General Assembly, or the people, shall be void.”
 
 (Italics ours.)
 

 Does membership on a county charter commission constitute the holding of public office? County charter commissions are authorized by Sections 3 and 4, Article X of the Constitution of Ohio, adopted November 7,1933, reading as follows:
 

 Section 3. “Any county may frame and adopt or amend a charter as provided in this Article. Every such charter shall provide the form of government of the county and shall determine which of its officers shall be elected and the manner of their election. It shall provide for the exercise of all powers vested in, and the performance of all duties imposed upon counties and county officers by law. Any such charter may provide for the concurrent or exclusive exercise by the county, in all or in part of its area, of all or of any designated powers vested by the Constitution or laws of Ohio in municipalities; it may provide for the organization of the county as a municipal corporation;
 
 *292
 
 and in any such case it may provide for the succession by the county to the rights, properties, and obligations of municipalities and townships therein incident to the municipal power so vested in the eounty, and for the division of the county into districts for purposes of administration or of taxation or of both. No charter or amendment vesting any municipal powers in the county shall become effective unless it shall have been approved by a majority of those voting thereon (1) in the county, (2) in the largest municipality, (3) in the county outside of such municipality, and (4) in each of a majority of the combined total of municipalities and townships in the county (not including within any township any part of its area lying within a municipality).”
 

 Section 4. “The Legislative authority of any charter county or the Board of County Commissioners of any other county may by a two-thirds vote of its members, or upon petition of ten per cent of the electors of the county shall forthwith, by resolution submit to the electors of the county the question,4 Shall a county charter commission be chosen?’ The question shall be voted upon at the next general or primary election, occurring not sooner than sixty days thereafter. The ballot containing the question shall bear no party designation, and provision shall be made thereon for the election from the county at large of fifteen electors as such commission if a majority of the electors voting on the question shall have voted in the affirmative. Candidates for such commission shall be nominated by petition of one per cent of the electors of the county, which shall be filed with the election authorities not less than forty days prior to such election. Candidates shall be declared elected in the order of the number of votes received, beginning with the candidate receiving the largest number; but not more than seven candidates residing in the same city or village may be elected. Within ten months after its election such com
 
 *293
 
 mission shall frame a charter for the county or amendments to the existing charter, and shall submit the same to the electors of the county, to be voted upon at the next general election occurring not sooner than sixty days after such submission. * * *
 

 “The foregoing provisions of this Article shall be self-executing except as herein otherwise provided.”
 

 Sections 1, 2 and 3 of Article XVI of the Constitution of Ohio are concerned with the revision, amendment or change of the state Constitution. That there is a similarity between a state constitutional convention and a county charter commission, particularly as to their creation and functions, is apparent. Of course, the latter is confined to a smaller unit of government,' and the scope of its operations is narrower, but in general respects the two are akin.
 

 While there is disagreement, the weight of authority and the more logical reasoning support the proposition that a state constitutional convention, in the discharge of its powers, duties and obligations, performs an important act of sovereignty and exercises legislative functions of a high order.
 
 Frantz
 
 v.
 
 Autry,
 
 18 Okla., 561, 91 P., 193;
 
 Loomis
 
 v.
 
 Jackson,
 
 6 W. Va., 613, 708;
 
 Sproule
 
 v.
 
 Fredericks,
 
 69 Miss., 898, 904, 11 So., 472, 474;
 
 Goodrich
 
 v.
 
 Moore, 2
 
 Minn., 61, 66, 72 Am. Dec., 74, 77.
 
 Contra, Wells
 
 v.
 
 Bain,
 
 75 Pa., 39, 15 Am. Rep., 563.
 
 A priori,
 
 the same is true of a county charter commission in a more limited sphere.
 

 Definitions of public office, and as to who are public officers, as enunciated by the courts and text-writers, are numerous. 23 American and English Encyclopaedia of Law (2d Ed.), 322, gives the following definitions: “In the most general and comprehensive sense, a public office is an agency of the state, and a person whose duty it is to perform this agency is a public officer. Stated more definitely, a public office is a charge or trust conferred by public authority for a public purpose, the duties of which involve in their
 
 *294
 
 performance the exercise of some portion of the sovereign power, whether great or small. A public officer is an individual who has been appointed or elected in the manner prescribed by law, who has a designation or title given to him by law, and who exercises the functions concerning the public assigned to him by law.”
 

 Similarly, Meehem on Public Offices and Officers, Section 1, page 1, has this to say: “A public office is the right, authority and duty, created and conferred by law, by which for a given period, either fixed by law or enduring at the pleasure of the creating power, an individual is invested with some portion of the sovereign functions of the government, to be exercised by him for the benefit of the public. The individual so invested is a public officer.”
 

 The Ohio cases contain definitions and suggestions of the same general import.
 
 State, ex rel. Attorney General,
 
 v.
 
 Kennon, 7
 
 Ohio St., 546;
 
 State, ex rel. Attorney General,
 
 v.
 
 Wilson,
 
 29 Ohio St., 347;
 
 State, ex rel. Attorney General,
 
 v.
 
 Brennan,
 
 49 Ohio St., 33, 29 N. E., 593;
 
 State, ex rel. Attorney General,
 
 v.
 
 Jennings,
 
 57 Ohio St., 415, 49 N. E., 404, 63 Am. St. Rep., 723;
 
 State, ex rel. Landis,
 
 v.
 
 Board of Commissioners of Butler County,
 
 95 Ohio St., 157, 115 N. E., 919;
 
 State, ex rel. Newman, State Librarian,
 
 v.
 
 Skinner,
 
 128 Ohio St., 325, 191 N. E., 127.
 

 Other authorities defining public office and enumerating various tests or criteria which may be applied in deciding whether a certain employment is a public office-are: 32 Ohio Jurisprudence, 853
 
 et seq.;
 
 22 Ruling Case Law, 372
 
 et
 
 seq.; 46 Corpus Juris, 922
 
 et
 
 seq.; 53 A. L. R., 595
 
 et seq.
 

 Manifestly each case must be determined on its own peculiar facts, having regard for the law under which the particular position is created.
 
 State, ex rel. Hogan, Atty. Genl.,
 
 v.
 
 Hunt,
 
 84 Ohio St., 143, 149, 95 N. E., 666, 668.
 

 Bearing in mind what has been said, we turn to an
 
 *295
 
 examination of the characteristics of membership on a county charter commission. The position is authorized by the organic law of the state, which prescribes the general duties to be performed. A member must be an elector, which assumes importance when considered in connection with Section 4, Article XV of the Constitution of Ohio, which says in part: “No person shall be elected or appointed to any
 
 office
 
 in this state unless possessed of the qualifications of an
 
 elector”.
 
 He is chosen by vote of the people. He exercises independent prerogatives and is not amenable to superior authority. His tenure is reasonably definite in that his duties must be fully accomplished within ten months after election. His participation in framing or amending a charter is in the performance of sovereign powers. The nature of his work possesses legislative qualities. His acts are in the public service. While he is not required to take an oath of office, gives no bond, and receives no compensation, these are lesser
 
 indicia
 
 of public office and lose significance when compared with the other more important criteria which have been noted.
 

 We are led to the inevitable conclusion that membership on a county charter commission, through election by popular vote, constitutes the holding of
 
 a public office of
 
 trust, and such is our decision. Therefore, the defendant, George H. Gessner, as a judge of the Court of Common Pleas of Mahoning county, is definitely precluded from serving as a member of the Charter Commission of Mahoning county by the provisions of Section 14, Article IV of the Constitution of Ohio. The demurrer to the petition is overruled.
 

 It appearing that the defendant does not desire to plead further, judgment of ouster will be entered against hiiñ. &
 

 T , , , ,
 
 Judgment of ouster.
 

 Weygandt, C. J., Stephenson, Williams, Jones, Matthias and Day, JJ., concur,