** Summary ** DUAL OFFICE HOLDING PROHIBITED A member of the Oklahoma Peanut Commission is an officer, and a member of a County Election Board is an officer, and therefore one person could not serve in both capacities. The Attorney General has received your request for an opinion wherein you asked: "Would a member of the Oklahoma Peanut Commission be eligible to serve as a member of the County Election Board?" The Oklahoma Peanut Commission was created by the Legislature in 1965. The powers and duties of the Commission are enumerated at 2 O.S. 1106 [2-1106] (1971), as follows: "2 O.S. 1106 [2-1106]. Powers and duties of commission. — In the administration of this act the commission shall have the following duties, authorities and powers: "(1) To conduct a campaign of research, promotion and education; "(2) to find new markets for peanuts and peanut products; "(3) to accept grants and donations; "(4) to sue and be sued; "(5) to enter into such contracts as may be necessary or advisable for the purpose of this act; "(6) to appoint an executive secretary and such other personnel as is needed, and to prescribe their duties and fix their compensation; "(7) to cooperate with any organization or agency, whether voluntary or created by law or any state or by national law engaged in work or activities similar to the work and activities of the commission, and to enter into contracts and agreements with such organizations or agencies for carrying on a joint campaign of research, promotion and education; "(8) to establish an office of the executive secretary at any place in this state the commission may select; and "(9) to prosecute in the name of the State of Oklahoma any suit or action for the collection of the tax or assessment herein provided." County Election Boards are provided for under 26 O.S. 21 [26-21] (1971) et seq. The creating statutes provide that each member shall take the oath of office as prescribed for other county officers. The members serve until their successors are appointed. In Pardoe v. Sellers, 3 P.2d 709 (Okla. 1931) the Court said at pages 710-711 of their opinion: "It appears clear that, for the purpose of administering the election laws, it was the intention of the Legislature to confer jurisdiction on the state election board only in those cases where the electors of the state or subdivision thereof greater than a county were entitled to vote, district judges and members of the Senate and House of Representatives being specifically excepted; and to confer jurisdiction upon the county election board as to all offices where the voters of a county or a lesser subdivision were entitled to vote, and that 'state officers,'as used in section 6101, C.O.S. 1921, means only the general elective officers of the state, and without regard to what are or are not state officers within the meaning of other statutes." Title 51 O.S. 6 [51-6] (1971), provides in part that: ". . . . no person holding an office under the laws of the State and no deputy of any officer so holding any office, shall, during his term of office, hold any other office or be the deputy of any officer holding any office, under the laws of the State. ***" The problem of what is and what is not an office as contemplated by 51 O.S. 6 [51-6] (1971), has been the subject of many official opinions of the Attorney General and much litigation since its passage in 1910. Each position questioned must be examined in light of its particular characteristics with the definition of officer, as defined by the Oklahoma courts, applied. The generally accepted guidelines for determining what a public office is, is outlined in the case of State v. Sowards, 82 P.2d 324
(Okla. 1938) wherein the Court said: "Public offices are created for the purpose of effecting the ends for which government has been instituted, which are the protection, safety, prosperity, and happiness of the people; and not the profit, honor, or private interest of any one man, family, or class of men. In our form of government, it is fundamental that public offices are a public trust, and that the persons to be appointed should be selected solely with a view to the public welfare. "It is not necessary to the creation of an office that the legislature declare in express words that such an office is created. The use of any language which shows the legislative intent to create the office is sufficient. "There are innumerable decisions defining the word 'office' or the words 'public office." "In State ex rel Newman v. Skinner, 128 Ohio St. 325, 191 N.E. 127,93 A.L.R. 331, the court said (page 128): " 'A public officer, as distinguished from an employee, must possess some sovereign functions of government to be exercised by him for the benefit of the public, either of an executive, legislative, or judicial character. * * *" (Emphasis added) The Oklahoma Peanut Commission is charged with the responsibility of acting in the name of the State of Oklahoma for the benefit of the State as a whole as it relates to the peanut growing industry in Oklahoma. The Commission is invested with some portion of the sovereign power, as enumerated in 1106 of the Oklahoma Peanut Act and therefore the Commissioners are public officers. The County Election Board has certain specific duties as to the supervision of county elections and the creation, alteration and discontinuance of boundary lines. Because of this authority it seems readily apparent that the Legislature intended for County Election Boards to have independent powers to act for the State of Oklahoma, to-wit: being vested with some portion of the sovereign functions, independently. A member of the County Election Board is therefore an officer. It is therefore the opinion of the Attorney General that your question be answered in the negative. A member of the Oklahoma Peanut Commission is an officer, and a member of a County Election Board is an officer, and therefore, under the provisions of 51 O.S. 1971 6 [51-6], one person could not serve in both capacities. (Duchess Bartmess)